

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

## DECLARATIONS

Policy Number     4716 20

333 South Seventh Street, Suite 2200; Minneapolis, MN 55402
(612) 341-4530     (800) 422-1370     fax (800) 305-1510

### LAWYERS PROFESSIONAL LIABILITY POLICY
### (THIS IS A CLAIMS-MADE POLICY – READ CAREFULLY)

| | |
|---|---|
| **Item 1.** Named Insured: Gallagher, Langlas & Gallagher P.C.  Office Address: Po Box 2615, Waterloo, IA 50704 | |

**Item 2.**
Policy Period:     10/1/2014    to    10/1/2015
                (the Effective Date)     (the Expiration Date)
12:01 A. M., standard time at the address of the Named Insured stated herein

**Item 3.**
Limits of Liability:     $4,000,000.00     Per Claim
                  $5,000,000.00     Aggregate

**Item 4.**
Deductible Amount:     $15,000.00     Per Claim

**Item 5.**
Total Number of Lawyers: 9                TOTAL PREMIUM: $36,154.00

**Item 6.**
Applicable Forms and Endorsements:
MLM-007 (03-86) Manuscript-Blank, MLM-013 (11-13) Prior Acts Exclusion Endorsement, MLM-019 (11-13) Prior Acts Retroactive Date, MLM-044 (11-13) Iowa Changes, MLM-2000 (11-13) Policy Form

In witness whereof, Minnesota Lawyers Mutual Insurance Company has caused this policy to be signed by its President and Secretary and countersigned by a duly authorized agent of the Company.

MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY

*[signature]*          *[signature]*          *[signature]*

John J. Bowden, Secretary     Kristina Simmons, Authorized Agent     Steven G. Brady, President

MLM-34 (05-94)

**EXHIBIT B**

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

| Named Insured | | Endorsement Number |
|---|---|---|
| Policy Number | Policy Period | Effective Date of Endorsement |
| 4716 20 | | |

The above information is to be completed only when this endorsement is issued subsequent to the preparation of the policy.

It is understood and agreed that Policy 4716-20 provides no coverage to any INSURED for any CLAIM arising out of or in any way involving the misappropriation of funds by David A. Roth.

All other terms and conditions remain the same.

Words and phrases that appear in all capital letters have special meaning. Please refer to the Definitions section of the policy.

MLM-7 (03-86) Page 1 of 1

Case 6:15-cv-02008-EJM   Document 21-2   Filed 04/09/15   Page 2 of 15

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

| Named Insured | | Endorsement Number |
|---|---|---|
| | | |

| Policy Number | Policy Period | Effective Date |
|---|---|---|
| 4716 20 | | |

## Prior Acts Exclusion Endorsement

It is understood and agreed that this policy does not afford coverage for the following:

any CLAIM made against any INSURED resulting from the rendering of or failure to render PROFESSIONAL SERVICES from 10/1/2013 12:01 a.m. to 10/30/2013 12:01 a.m. even if such CLAIM is made and reported during the POLICY PERIOD.

All other terms and conditions remain the same.

Words and phrases that appear in all capital letters have special meaning.
Please refer to the Definitions section of the policy.

MLM-13 (11-13)          Page 1 of 1

Case 6:15-cv-02008-EJM   Document 21-2   Filed 04/09/15   Page 3 of 15

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

| Named Insured | | Endorsement Number |
|---|---|---|
| | | |
| Policy Number | Policy Period | Effective Date |
| 4716 20 | | |

## Prior Acts Retroactive Date Endorsement

It is understood and agreed that the PRIOR ACTS RETROACTIVE DATE for the following INSURED(S) are listed below. All PRIOR ACTS RETROACTIVE DATES are effective 12:01 a.m. on the date(s) listed below:

| INSURED(S) | PRIOR ACTS RETROACTIVE DATE |
|---|---|
| Timothy C. Boller | 6/1/1981 |
| E.J. Gallagher III | Full Prior Acts |
| Edward J. Gallagher, Jr | Full Prior Acts |
| Thomas W. Langlas | Full Prior Acts |
| Dominic Pechota | 10/1/2004 |
| Karen L. Thalacker | 7/17/1998 |
| Melissa M. Timmermans | 9/18/2014 |
| Thomas C. Verhulst | Full Prior Acts |
| George L. Weilein | Full Prior Acts |

All other terms and conditions remain the same.

Words and phrases that appear in all capital letters have special meaning. Please refer to the Definitions section of the policy.

MLM-019 (11-13)   Page 1 of 1

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

| Named Insured | | Endorsement Number |
|---|---|---|
| | | |

| Policy Number | Policy Period | Effective Date |
|---|---|---|
| 4716 20 | | |

## IOWA CHANGES ENDORSEMENT

It is understood and agreed that the following provisions modify the terms and conditions afforded by this policy:

### I. EXTENDED REPORTING PERIOD OPTIONS

Firm Extended Reporting Period Endorsement is deleted in its entirety and replaced with:

The NAMED INSURED shall have the option to purchase either a one year Firm Extended Reporting Period Endorsement which will be annually renewable at the option of the NAMED INSURED or an unlimited Firm Extended Reporting Period Endorsement provided:
(1) this policy is cancelled or non-renewed by either the NAMED INSURED or US;
(2) the PRIOR ACTS RETROACTIVE DATE or continuity date is advanced;
(3) coverage is renewed on other than a claims-made basis

The premium for the Firm Extended Reporting Period Endorsement will be calculated using the rules and rates in effect during the POLICY PERIOD of the policy to which the Firm Extended Reporting Period Endorsement attaches. The entire premium for the Firm Extended Reporting Period Endorsement is fully earned at the commencement of the Firm Extended Reporting Period.

The Firm Extended Reporting Period Endorsement is available or renewable only if:
(1) the NAMED INSURED has paid all premium and deductible amounts due;
(2) the NAMED INSURED has requested the Firm Extended Reporting Period Endorsement; within 60 days of the end of the POLICY PERIOD;
(3) the premium is paid within 60 days of the effective date of this endorsement; and
(4) renewal coverage is not accepted by or offered to the NAMED INSURED

The option to purchase either the unlimited or one year Firm Extended Reporting Period Endorsement must be exercised in writing directly to US within 60 days after the end of the POLICY PERIOD or the expiring Firm Extended Reporting Period Endorsement. Such written notice must include payment of the applicable premium for the endorsement. If the required notice is not submitted directly to US within the timeframe described above, the NAMED INSURED will not, at any later date, be able to purchase the Firm Extended Reporting Period Endorsement.

At the inception of the initial Firm Extended Reporting Period Endorsement the aggregate limit of liability will be fully reinstated to the aggregate limit of liability which was available on the policy to which it attaches.

The Firm Extended Reporting Period Endorsement does not extend the POLICY PERIOD or change the scope of coverage.

MLM-44 (11-13)　　　　　　　　　　　Page 1 of 2

Case 6:15-cv-02008-EJM   Document 21-2   Filed 04/09/15   Page 6 of 15

## II. CANCELLATION OR NON-RENEWAL

The Cancellation or Non-Renewal section is deleted in its entirety and replaced with:

This policy may be canceled by:

(1) The NAMED INSURED by giving US written notice stating when thereafter cancellation is to be effective. Ninety percent of the pro-rata unearned premium will be returned to the NAMED INSURED.

(2) The NAMED INSURED may cancel this policy by mailing or delivering to US advance written notice of cancellation.

(3) (a) WE may cancel this policy, by mailing or delivering to the NAMED INSURED written notice of cancellation:
  (i) by giving notice at least 30 days before the effective cancellation date if WE cancel because of loss of reinsurance or;
  (ii) by giving notice at least 10 days before the effective cancellation date if WE cancel for any other reason.
  (b) If this policy is a new policy and has been in effect for fewer than 60 days, WE may cancel for:
    (i) loss of reinsurance subject to (4) below; or
    (ii) for any other reason.
  (c) If this policy has been in effect 60 days or more or WE have previously renewed this policy, WE may cancel if at least one of the following conditions occur:
    (i) Nonpayment of premium or;
    (ii) Misrepresentation or fraud made by or with the knowledge of an INSURED in obtaining the policy or contract, when renewing the policy or contract, or in presenting a CLAIM under the policy or contract or;
    (iii) Actions or omissions by an INSURED which substantially change or increase the risk insured or;
    (iv) Determination by the commissioner that the continuation of the policy will jeopardize OUR solvency or will constitute a violation of the law of this or any other state or;
    (v) An INSURED has acted in a manner which an INSURED knew or should have known was in violation or breach of a policy or contract term or condition or;
    (vi) Loss of reinsurance subject to (4) below.

(4) WE may cancel at any time if WE lose reinsurance coverage which provides a significant portion of the underlying risk insured, but only if the commissioner determines that such cancellation is justified.

WE may non-renew this policy by mailing or delivering written notice to the NAMED INSURED'S last known address at least 45 days prior to the expiration date of this policy. WE will not need to mail or deliver written notice if we offer to renew or if the NAMED INSURED fails to pay a premium due or any advance premium required by US for renewal.

All other terms and conditions remain the same.

Words and phrases that appear in all capital letters have special meaning.
Please refer to the Definitions section of the policy.

MLM-44 (11-13)                    Page 2 of 2

# MINNESOTA LAWYERS MUTUAL
INSURANCE COMPANY

## LAWYERS PROFESSIONAL LIABILITY INSURANCE
## CLAIMS-MADE POLICY

### COVERAGE

WE will pay, subject to OUR limit of liability, all DAMAGES the INSURED may be legally obligated to pay and CLAIM EXPENSE(S), due to any CLAIM, provided that:
(1) the CLAIM arises out of any act, error or omission of the INSURED or a person for whose acts the INSURED is legally responsible;
(2) the act, error, or omission occurred on or after the PRIOR ACTS RETROACTIVE DATE and prior to the expiration date of the POLICY PERIOD;
(3) the CLAIM results from the rendering of or failure to render PROFESSIONAL SERVICES;
(4) the CLAIM is deemed made during the POLICY PERIOD; and
(5) the CLAIM is reported to US during the POLICY PERIOD or within 60 days after the end of the POLICY PERIOD.

A CLAIM is deemed made when:
(1) a demand is communicated to an INSURED for DAMAGES resulting from the rendering of or failure to render PROFESSIONAL SERVICES; or
(2) an INSURED first becomes aware of any actual or alleged act, error or omission by any INSURED which could reasonably support or lead to a CLAIM.

All CLAIMS arising out of the same or related PROFESSIONAL SERVICES shall be considered one CLAIM, and shall be deemed made when the first CLAIM was deemed made.

### DEFENSE AND SETTLEMENT

WE have the exclusive right to investigate, negotiate and defend CLAIMS seeking DAMAGES against any INSURED for which this policy provides coverage. No INSURED may negotiate or agree to a settlement of any CLAIM without OUR prior consent. This policy will not cover any part of a settlement of a CLAIM made without OUR consent.

WE will not settle a CLAIM without the written consent of the INSURED. If the INSURED refuses to consent to acceptance of an offer of settlement within the applicable limit of liability by or on behalf of a claimant where acceptance is recommended by US, then OUR liability for the CLAIM will not exceed the amount of the offer rejected by the INSURED plus CLAIM EXPENSE incurred to the date of such refusal.

After WE have paid the limit of liability or resolved all CLAIMS covered by this policy WE will not:
(1) pay any DAMAGE(S) or CLAIM EXPENSE(S), or
(2) undertake or continue the defense or investigation of any CLAIM or suit.

The INSURED must cooperate with US in the investigation and defense, without charge by the INSURED or reimbursement of the INSURED's expenses except as provided by the Supplementary Payment provisions of this policy.

### TERRITORY

This policy applies to any act, error or omission which occurs anywhere in the world, provided the suit is first brought and resolved within the United States and its territories or Canada.

## SUPPLEMENTARY PAYMENTS

Payments made under paragraphs (1) and (2) below will not be subject to the deductible. Such payments are in addition to the limits of liability.

(1) Loss of Earnings
WE will reimburse each INSURED up to $500.00 for loss of earnings for each day or part of a day for such INSURED's attendance, at OUR request, at a trial, hearing or alternative dispute resolution proceeding, including arbitration proceeding or mediation, involving a CLAIM against such INSURED.

(2) DISCIPLINARY PROCEEDINGS
WE have the exclusive right to investigate, negotiate and defend the INSURED by paying attorney fees and expenses resulting from DISCIPLINARY PROCEEDINGS incurred as the result of a notice of such DISCIPLINARY PROCEEDING both first received by the INSURED and reported to US during the POLICY PERIOD, or received by the INSURED during the POLICY PERIOD and reported to US within 60 days after the end of the POLICY PERIOD, arising out of an act, error or omission in the rendering of PROFESSIONAL SERVICES by such INSURED;

**The total amount we will pay under these Supplementary Payment provisions shall not exceed $5,000 per policy period.**

## DEFINITIONS

"CLAIM(S)" means:
(1) a demand communicated to the INSURED for DAMAGES or PROFESSIONAL SERVICES;
(2) a lawsuit served upon the INSURED seeking such DAMAGES;
(3) any notice or threat, whether written or oral, that any person, business entity or organization intends to hold an INSURED liable for such DAMAGES; or
(4) any act, error or omission by any INSURED which could reasonably support or lead to a demand for such DAMAGES.

"CLAIM EXPENSE(S)" means:
fees charged by an attorney(s) retained by US to defend CLAIMS and all expenses incurred by US or with OUR consent in the investigation, negotiation and disposition of CLAIMS. Salary charges or expenses of OUR regular employees are not CLAIM EXPENSES. Expenses of, or charges by, the INSURED without OUR prior written consent also are not CLAIM EXPENSES.

"CLIENT FUNDS" means:
funds held in a trust account by the insured for the benefit of a client. CLIENT FUNDS do not include any amounts provisionally credited to the trust account from a counterfeit check, draft or instrument.

"DAMAGE(S)" means:
monetary judgments or monetary settlements. DAMAGE(S) does not include any of the following:
(1) any fine, penalty or sanction imposed by law or otherwise, or the multiplied portion of any damages assessed against any INSURED imposed directly or vicariously, whether or not imposed by statute or common law;
(2) punitive or exemplary damages assessed against any INSURED, whether or not allowed by statute or common law;
(3) any forfeiture, reduction, discount or return of professional fees earned or claimed by any INSURED;
(4) the portion of any award, judgment or settlement that does not compensate for loss;
(5) any order for restitution or other payment by a court, tribunal, or agency of government made in connection with the criminal conviction of an INSURED;
(6) the sanction of an INSURED to pay any fine, penalty or sum adjudged as restitution for damage or harm caused by an INSURED or as reimbursement to a court, tribunal or agency for its costs; or
(7) any costs, disbursements, attorneys fees or other relief sought or awarded in any lawsuit or arbitration proceeding that solely seeks a forfeiture, reduction, discount or return of professional fees earned or that does not otherwise seek monetary judgments or monetary settlements.

"DISCIPLINARY PROCEEDING(S)" means:
an investigation or proceeding before a licensing board, peer review or other sanctioning or licensing body.

"INSURED(S)" means:
(1) the NAMED INSURED;
(2) any partner, member, shareholder or employee of the NAMED INSURED at the time the CLAIM is reported for PROFESSIONAL SERVICES rendered:
   (a) on behalf of the NAMED INSURED; or
   (b) prior to their relationship with the NAMED INSURED, subject to the PRIOR ACTS RETROACTIVE DATE, if any;
(3) any former partner, member, shareholder or employee for former acts, errors or omissions in performing PROFESSIONAL SERVICES on behalf of the NAMED INSURED;
(4) the heirs, assigns and legal representatives of an INSURED in the event of the INSURED's death, incapacity or bankruptcy to the extent that the INSURED would have been covered;
(5) any lawyer who is acting as of counsel;
   (a) is named and described in the application as of counsel;
   (b) is performing PROFESSIONAL SERVICES on behalf of the NAMED INSURED; and
(6) any lawyer who is acting as an independent contractor and is performing PROFESSIONAL SERVICES on behalf of the NAMED INSURED.

"NAMED INSURED" means:
the person or entity shown in Item 1 of the Declarations and any PREDECESSOR FIRM.

"PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY" means:
an attorney who regularly engages in a private law practice and maintains a separate law office for that purpose in addition to acting as an employee of a governmental body, subdivision or agency.

"POLICY PERIOD" means:
the period from the effective date of this policy to the expiration date or earlier termination date of this policy.

"PREDECESSOR FIRM" means:
any law firm to whose liabilities the NAMED INSURED is the majority successor in interest.

"PRIOR ACTS RETROACTIVE DATE" means:
the date on or after which any act, error or omission must have occurred in order for any CLAIM(S) arising therefrom to be covered by the policy.

"PROFESSIONAL SERVICES" means:
legal or notary services provided for others, while engaged in the private practice of law or while acting as a PART TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY, including, but not limited to:
(1) services as administrator, conservator or guardian, executor or personal representative, trustee;
(2) escrow agent, title insurance agent;
(3) mediator, arbitrator or other participant in a dispute resolution process;
(4) activities as a member of a bar association, ethics, peer review, formal accreditation or licensing, or similar professional board or committee; and
(5) activities as an author, strictly in the publication or presentation of research papers, articles in attorney trade publications or similar materials only if the fees generated from such work are not greater than ten thousand dollars ($10,000).

"TOTALLY AND PERMANENTLY DISABLED" means:
that the partner, member, shareholder or employed attorney has become so incapacitated as to be wholly prevented from rendering PROFESSIONAL SERVICES provided such disability:
(1) has existed continuously for not less than six (6) months;
(2) is expected to be continuous and permanent; and
(3) is certified by a medical doctor.

"WE", "US" and "OUR" mean:
Minnesota Lawyers Mutual Insurance Company.

## EXCLUSIONS

This policy does not afford coverage for the following:

(1) any CLAIM made against any INSURED arising out of the dishonest, criminal, malicious or deliberately fraudulent act of the INSURED, except this exclusion shall not apply to those INSUREDS who had no knowledge of such act, took action to prevent further wrongdoing upon learning of such act and immediately notified US after personally learning of such act;

(2) any CLAIM made against any INSURED for bodily injury, sickness or death of any person or damage to or loss of use of any tangible property;

(3) any CLAIM made against any INSURED arising out of PROFESSIONAL SERVICES rendered by any INSURED in connection with any business enterprise
 (a) owned in whole or in part;
 (b) controlled directly or indirectly; or
 (c) managed
by any INSURED, where the claimed DAMAGES result from an actual or alleged conflict of interest;

(4) any CLAIM made by an employer against any INSURED who is an employee of such employer, unless the CLAIM is made against an INSURED acting as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY;

(5) any CLAIM for DAMAGES sustained by an INSURED as a beneficiary or distributee of any trust or estate;

(6) any CLAIM made against any INSURED arising out of an INSURED'S activities as an officer or director of an employee trust, charitable organization, corporation, company or business other than that of the NAMED INSURED;

(7) any CLAIM made against any INSURED arising out of an INSURED'S activities as an elected public official or as an employee of a governmental body, subdivision or agency, unless the CLAIM arises out of PROFESSIONAL SERVICES rendered as a PART-TIME EMPLOYED ATTORNEY OF A GOVERNMENTAL BODY, SUBDIVISION OR AGENCY;

(8) any CLAIM made against any INSURED arising out of an INSURED's activities as a fiduciary under the Employee Retirement Income Security Act of 1974, its amendments and any regulation or order issued pursuant thereto. This exclusion does not apply if the INSURED is deemed to be a fiduciary solely by reason of legal advice rendered with respect to an employee benefit plan;

(9) any CLAIM made against any INSURED based upon or arising out of actual or alleged discrimination by an INSURED including those based on race, creed, age, sex, marital status or sexual preference;

(10) any CLAIM made against any INSURED based upon or arising out of actual or alleged sexual harassment by the INSURED;

(11) any CLAIM made against any INSURED involving a compensation or employment dispute between INSUREDS or former employees of the NAMED INSURED;

(12) any CLAIM made against any INSURED based on or arising out of an obligation to indemnify, if assumed by contract, which exposes the INSURED to liability which they would otherwise not have, but for such contract;

(13) any CLAIM made against any INSURED arising out of the solicitation or sale of securities or investments by any INSURED;

(14) any CLAIM made against any INSURED resulting from terrorism, war, invasion, hostilities, act of foreign enemies, civil war, rebellion, insurrection, military or usurped power, or martial law or confiscation by order of any government or public authority;

(15) any CLAIM made against any INSURED for losses resulting from the deposit or negotiation of a check or other financial instrument that is discovered to be either counterfeit or drawn on an account with insufficient funds, except CLAIMS for the loss of CLIENT FUNDS on deposit in a trust account where such loss is attributable to disbursements made in reliance on such financial instrument.

---

## EXTENDED REPORTING PERIOD OPTIONS

**A. Firm Extended Reporting Period Endorsement**

If this policy is cancelled or non-renewed by either the NAMED INSURED or US, the NAMED INSURED shall have the option to purchase either:

(1) a one year Firm Extended Reporting Period Endorsement which will be annually renewable at the option of the NAMED INSURED; or

(2) an unlimited Firm Extended Reporting Period Endorsement.

The premium for the Firm Extended Reporting Period Endorsement will be calculated using the rules and rates in effect during the POLICY PERIOD of the policy to which the Firm Extended Reporting Period Endorsement attaches. The entire premium for the Firm Extended Reporting Period Endorsement is fully earned at the commencement of the Firm Extended Reporting Period.

The Firm Extended Reporting Period Endorsement is available or renewable only if:
(1) the NAMED INSURED has paid all premium and deductible amounts due;
(2) the premium is paid within 60 days of the effective date of this endorsement; and
(3) renewal coverage is not accepted by or offered to the NAMED INSURED.

The option to purchase either the unlimited or one year Firm Extended Reporting Period Endorsement must be exercised in writing directly to US within 60 days after the end of the POLICY PERIOD or the expiring Firm Extended Reporting Period Endorsement. Such written notice must include payment of the applicable premium for the endorsement. If the required notice is not submitted directly to US within the timeframe described above, the NAMED INSURED will not, at any later date, be able to purchase the Firm Extended Reporting Period Endorsement.

At the inception of the initial Firm Extended Reporting Period Endorsement, the aggregate limit of liability will be fully reinstated to the aggregate limit of liability which was available on the policy to which it attaches.

The Firm Extended Reporting Period Endorsement does not extend the POLICY PERIOD or change the scope of coverage.

**B. Individual Retirement Extended Reporting Period Endorsement**

Except as provided in C. below, in the event that any partner, member, shareholder or employed attorney of the NAMED INSURED retires and ceases the performance of all private practice of law, that partner, member, shareholder or employed attorney shall have the option to purchase either:
(1) a one year Individual Retirement Extended Reporting Period Endorsement which will be annually renewable at the option of the INSURED; or
(2) an unlimited Individual Retirement Extended Reporting Period Endorsement.

In the event that the partner, member, shareholder or employed attorney resumes the private practice of law, the coverage provided herein shall be void.

The premium for the Individual Retirement Extended Reporting Period Endorsement will be calculated using the rules and rates in effect during the POLICY PERIOD of the policy to which the Individual Retirement Extended Reporting Period Endorsement attaches. The entire premium for the Individual Retirement Extended Reporting Period Endorsement is fully earned at the commencement of the Individual Retirement Extended Reporting Period.

The partner, member, shareholder or employed attorney's option to purchase the Individual Retirement Extended Reporting Period Endorsement must be exercised in writing directly to US no later than 60 days after the retired attorney is no longer continuously insured by US. Such written notice must include payment of the applicable premium for the endorsement. If the required notice is not submitted directly to US within the timeframe described above, the attorney will not, at any later date, be able to purchase an Individual Retirement Extended Reporting Period Endorsement.

Coverage under the Individual Retirement Extended Reporting Period Endorsement applies only if there is no other applicable coverage.

Any Individual Retirement Extended Reporting Period Endorsement does not extend the POLICY PERIOD, change the scope of coverage or increase the limits of liability of the policy to which the endorsement is attached.

**C. Death or Disability Extended Reporting Period Endorsement**

If during the POLICY PERIOD a partner, member, shareholder or employed attorney dies or becomes TOTALLY AND PERMANENTLY DISABLED, he or she will be entitled to an unlimited Death or Disability Extended Reporting Period Endorsement at no additional premium.

In the event that any other coverage applies or the disabled attorney resumes the private practice of law, the coverage provided herein shall be void.

If an INSURED dies the INSURED'S estate, heirs, executors or administrators must notify US.

If an INSURED becomes TOTALLY AND PERMANENTLY DISABLED and the Death or Disability Extended Reporting Period Endorsement is desired, the INSURED or the INSURED's legal guardian must provide US written proof that he or she is TOTALLY AND PERMANENTLY DISABLED. The proof of disability must be received by US within 180 days of the end of the POLICY PERIOD. We retain the right to contest the certification by the INSURED's physician and it

MLM-2000 (11-13)                    Page 5 of 8

Case 6:15-cv-02008-EJM   Document 21-2   Filed 04/09/15   Page 12 of 15

is a condition precedent to this coverage that the INSURED agrees to submit to examinations by any physician designated by US.

Any Death or Disability Extended Reporting Period Endorsement WE issue does not extend the POLICY PERIOD, change the scope of coverage or increase the limits of liability of the policy to which the endorsement is attached.

## NOTICE OF CLAIMS AND DISCIPLINARY PROCEEDINGS

In the event of a CLAIM, DISCIPLINARY PROCEEDING, disciplinary investigation or notice to appear before a review board, the INSURED must:
(1) give immediate written notice to US; and
(2) forward every demand, notice, summons or other communication received by the INSURED or his or her representative to:

**Mail or Delivery**
Minnesota Lawyers Mutual Insurance Company
Claim Department
333 South Seventh Street, Suite 2200
Minneapolis, MN 55402

**Fax**
(800) 305-1510

You must give US notice during the POLICY PERIOD or within 60 days after the end of the POLICY PERIOD for coverage to apply.

## LIMIT OF LIABILITY

The per CLAIM limit on the Declarations is the maximum amount of OUR liability for all DAMAGES and CLAIM EXPENSE arising out of the same or related PROFESSIONAL SERVICES without regard to the number of CLAIMS or claimants.

All CLAIM EXPENSE shall first be subtracted from the limit of liability. The remainder, if any, is the amount available to pay DAMAGES.

The aggregate limit in Item 3 of the Declarations is the total amount of OUR liability for DAMAGES and CLAIM EXPENSE from CLAIMS first reported to US during:
(1) the POLICY PERIOD;
(2) any Individual Retirement Extended Reporting Period Endorsement; or
(3) any Death or Disability Extended Reporting Period Endorsement.

The inclusion in this policy of more than one INSURED will not increase the limits of OUR liability.

## DEDUCTIBLE

The limit of liability will apply in excess of the deductible.

The deductible will be subtracted from the total amount of covered DAMAGES resulting from each CLAIM reported to US during the POLICY PERIOD.

The deductible shall be paid by the NAMED INSURED, or upon the NAMED INSURED'S failure to pay within 30 days of written demand, by all INSUREDS on whose behalf WE paid DAMAGES and/or CLAIM EXPENSE.

## REIMBUREMENT TO US

The INSURED will be liable for amounts WE have paid in settlement of CLAIMS or satisfaction of judgments in excess of the limits of OUR liability. The INSURED will also be liable for amounts paid within the deductible. These amounts shall be payable within 30 days of written demand.

The INSURED will not be entitled to reimbursement of any amount paid as a deductible until WE have fully recovered all DAMAGES paid under this policy.

The INSURED will reimburse US all amounts held or recovered by the INSURED for any DAMAGES or CLAIM EXPENSE(S) covered by this policy

## SUBROGATION

To the extent of any payment under this policy, WE will be subrogated to all of the INSURED's rights of recovery. The INSURED will do whatever is necessary to secure such rights. The INSURED will do nothing to prejudice these rights.

## ACTION AGAINST US

No action shall lie against US unless:
(1) The INSURED has fully complied with all the terms of this policy and
(2) The amount of the INSURED's obligation to pay has been finally determined by judgment after trial and all appeals, if any, or by written agreement of the INSURED, the claimant and US.

No one may join US as a party to an action against the INSURED to determine the INSURED's liability under this policy. WE may not be impleaded by the INSURED. Bankruptcy or insolvency of the INSURED or his or her estate will not relieve US of any of OUR obligations.

## OTHER INSURANCE

This policy is excess over any other insurance or other risk-shifting device including any automatic or optional extended reporting period, whether collectible or not, which provides insurance for such liability or CLAIM, whether the insurance is stated to be primary, pro rata contributory, excess, contingent or otherwise. Risk-shifting device includes, but is not limited to, self-insurance and other risk-sharing agreements.

This provision does not apply to other insurance written specifically to be excess of this policy.

## CANCELLATION OR NON-RENEWAL

This policy may be canceled by:
(1) The NAMED INSURED by giving US written notice stating when thereafter cancellation is to be effective. Ninety percent of the pro-rata unearned premium will be returned to the NAMED INSURED.
(2) US with ten days written notice for non-payment of premium. WE will give the NAMED INSURED notice of premium due and the date due at least ten days before the effective cancellation date.

WE may cancel this policy during the term of the policy with 60 days written notice in accordance with state statutes regulating mid-term cancellation.

OUR written notice will be made by first class mail addressed to the NAMED INSURED or by delivery to the NAMED INSURED'S last known address. The effective date of cancellation stated in the notice will become the end of the POLICY PERIOD. Earned premiums will be computed pro-rata. Premium adjustments will be made as soon as practicable. OUR tender of unearned premium is not a precondition of cancellation.

WE may non-renew for any reason or no reason on 60-days notice prior to the expiration of this policy. Changes in terms available on renewal will not be deemed to be a non-renewal of the policy.

## REPRESENTATION IN APPLICATION

The application for coverage is a part of this policy. The application includes any Firm Information Verification form and/or Renewal Update form.

By acceptance of this policy the INSURED agrees:
(1) the statements in the application are the representations of all INSUREDS;
(2) such representations are material as this policy is issued in reliance upon the truth of such representations; and
(3) this policy embodies all of the agreements between the INSURED, US and/or OUR agent.

## CHANGES

The terms of this policy shall not be waived or changed, except by written endorsement provided by US.

Any additions to or deletions from the attorneys named in the application must be reported to US in writing within 30 days of the change. In the event of any such changes WE reserve the right to re-evaluate the risk and, at OUR option, take appropriate underwriting actions.

Any premium adjustments will be made on a pro-rata basis.

## ASSIGNMENT

The INSURED may not assign this policy to any other person or entity.

## MUTUAL POLICY CONDITIONS

The NAMED INSURED is a member of Minnesota Lawyers Mutual Insurance Company and shall participate in the distribution of dividends, to the extent and upon the conditions fixed and determined by the Directors.

The NAMED INSURED has one vote by virtue of this policy in the election of the Directors of Minnesota Lawyers Mutual Insurance Company.

Policyholders are not assessable for the debts and obligations of the Company

## NOTICE OF ANNUAL MEETING

The NAMED INSURED is hereby notified that while this policy is in force, he, she or it is by virtue hereof a member of Minnesota Lawyers Mutual Insurance Company and that the annual meeting of said company is held each year on the fourth Tuesday of the month of June at the principal place of business of the corporation unless the Board of Directors upon proper notice determines to hold the annual meeting at a different time or location.

*In witness thereof*, WE caused this policy to be executed and attested

By

_[signature]_  
Secretary

_[signature]_  
President